*Delaware County, May Term*, 1822.

Before Judges McLean and Burnet.

LESSEE OF N. PATRICK *v.* GIDEON OOSTEROUT.

Lands sold upon execution must be valued, and the valuers must be sworn, or the sale is void.

THE lessee of the plaintiff claimed under a sheriff's deed. In the year 1815, Norman Patrick obtained a judgment in the court

of common pleas, against Oosterout, and took out execution, which was levied on one hundred acres of land belonging to the defendant. The sheriff returned an appraisement which did not identify the land in any other manner than by stating the same to be " one hundred acres of land where G. Oosterout lived." It did not appear by the appraisement that the freeholders were sworn.

Two questions were submitted to the court: *First.* Is it necessary under a sheriff's deed to exhibit the appraisement? *Second.* Is the return of the appraisement sufficient?

L. & C. COWLES, for plaintiff:

The judgment, execution, and sheriff's deed are all that is necessary to establish the right of the plaintiff to a recovery. The appraisement is a part of the sheriff's return which ought to be taken advantage of, if at all, at the return term of the execution. 1 Ld. Ray, M. 346. The court could then correct the appraisement before the money should be applied to the discharge of the execution, and place the plaintiff, defendant, and *purchaser, in *statu* [28 *quo.* The purchaser has no day in court to examine the correctness of the proceedings : the law presumes that every officer does his duty, until the contrary appears. The purchaser is to presume in favor of the jurisdiction of the court, as well as the legality of the acts of its ministerial officers.

It is understood to be the practice of the Circuit Court of the United States, not to listen to objections to appraisements after the return term of the execution. This practice adds to the security of all parties. It should be the policy of the court to render sales under the sheriff as certain as possible ; otherwise real estate would never sell, or be sacrificed. No person would purchase at sheriff's sale if he supposed his title depended upon a perpetuation of every ministerial slip of the officer ; or if it did, it would be at a price proportioned to such hazard. This would operate equally unjust for the creditor and debtor. The desperate speculator alone would be benefited. As the statute makes it the duty of the appraisers to be sworn, or of the sheriff to have them sworn, it is a fair presumption of law that the duty was performed. In the case of Charles H. Atherton *v.* J. Jones, Adam's R. M. H. 363, the court decided that the creditor himself, who was a justice of the peace, might administer the oath to the appraisers, and in the case of Porter et al. *v.* Bean, Sar. 362 ; 7 Mass. 371, it was also adjudged that the *attorney*

29

of the creditor was competent to swear the appraisers. These were both actions of ejectment, or writs of entry in the nature of ejectment. These authorities at least show that the courts will not listen to every trifling exception to appraisements.

SWAN, for defendant.

There can be but two ways of divesting a man of his estate : first, by his own act and consent; and second, by act and operation of law. The law which divests a man of his fee in favor of his creditor, is of modern invention; and in many respects operates severely upon the debtor. As money appears to be only a representative of personal property, this, and many other states in the Union, in giving the creditor power over estates, have placed barriers in the way to its total sacrifice, by a sudden exposure to sale. In Massachusetts, New Hampshire, and perhaps other states in the Union, the estate of the judgment debtor is set off to the creditor by the sheriff and three reputable freeholders, under oath, subject, however, to redemption within a year. Before the creditor in this state can be divested of his fee by law, there must not only be a *judgment and execution*, but the "officer levying such execution **29**: *shall* call an inquest of five reputable freeholders, and the inquest shall, on oath or affirmation, return to said officer, under their hands and seals, an estimate of the real value of such estate," etc. 14 L. O. 175, sec. 11. "Provided, that no tract of land shall be sold for less than two-thirds of the returned value of the inquest." If the defendant has been divested of his estate, it has been by virtue of this statute.

1. The appraisement does not identify any land.

2. The appraisers were never sworn.

The appraisers, from anything that appears from the return, never made any "actual view" of the premises. Nor can it be ascertained whether the land appraised was the tract levied upon and sold. It would be easy, if this appraisement is sufficient, to defeat the legislature's intention, by levying upon a tract of land and causing another to be viewed and valued which might not be worth a tenth part of the one offered for sale. This appraisement will apply equally to any cause in any other court. If good in this case it will supersede the necessity of ever having another between the same parties. The officer's levy must be certain. If necessary he may take with him a surveyor. It is the duty of the

appraisers to make actual view of the premises thus levied upon, and if there should be any difficulty in ascertaining the boundaries of the tract, they may also take to their assistance a surveyor; it is indeed their duty to do so to prevent injuries to the parties.

But the second point is clear. Courts may as well dispense with the oath of jurors as appraisers. The law is no more plain and peremptory in the one case than the other. Dispense with the certainty of the land, and with the oath of the appraisers, and it would be useless to preserve the other provisions of the statute. The *amount*, the *view*, the *seal*, and *return* itself, might follow without further injury. In the case of Selden *v.* Goodwin, 1 Day, 312, it was held that a decree of probate, ordering a sale of lands, furnished no legal evidence that an inventory had been made.

It has also been held by the same court that in order to make out a title to land, by the levy of an execution, it must be shown that the appraisers were disinterested freeholders, and that they *were sworn according to law.* 1 Day, 109.

When a purchaser claims under a special authority, it is his duty to show that the delegated powers have been strictly pursued. If one acting under a power of attorney, had general authority to sell the estates of his principal, provided he had them first appraised *by five freeholders under oath, and the same were sold for [30 two-thirds of such valuation, would it not be incumbent upon a purchaser to show that the agent strictly pursued his authority? It would seem too absurd to draw a negative conclusion. Chief Justice Marshall has laid down the true rule in these cases. 4 Cranch, 403. His words are: "It would be going too far to say that a collector selling land with or without authority, could, by his conveyance, transfer the title of the rightful proprietor." "He must act in conformity with the law from which his power is derived, and the purchaser is bound to inquire whether he has so acted." "It is true that full evidence 'of every minute circumstance, especially at a distant day, ought not to be required." In this case we ask not for *minute circumstances:* we ask for a compliance substantially with the statute. We maintain that the legislature intended that an appraisement should be a solemn act under oath, and that a judgment debtor should not be divested of his estate without that preliminary solemnity.

Lessee of Patrick *v.* Oosterout.

By the COURT.

The question presented in this case is an important one, as it may involve property to a large amount; but we are not at liberty to dispense with a legislative provision, whatever may be the consequence of enforcing it. It is our duty to inquire what the law is in this, as in every other case, and having ascertained it, we can not turn to the right hand or to the left. The inconvenience or hardship of the case we can not remedy, however we may regret it. The defendant's counsel have placed the question on its true ground, that a man can not be legally deprived of his estate unless the provisions of the law by which it is taken are substantially pursued. The objection to the plaintiff's title is, that the appraisers were not sworn. It is contended that this was a necessary step in the proceedings, and that it ought to have been returned by the officer.

The statute puts it beyond all doubt that the "inquest shall return on oath or affirmation to the sheriff," etc. The officer can not be said to have caused an appraisement to be made unless the oath has been administered and a certificate of the fact accompanies the return. From the statute it would seem that the ministerial act of the sheriff ceases, so far as it respects the appraisers, when he has assembled them. It does not appear to be any part of his duty, by the law under consideration, to swear or affirm the inquisitors, or to cause it to be done. It would be a fair construction of the law, that the appraisers themselves should take an oath 31] before some judicial *officer, and whether the same should be certified by the person who administered it or by the appraisers, this court would deem immaterial. Such seems to have been the decision in the case of Atherton *v.* Jones, cited by the bar. The court there, in speaking of the mode of making return of the appraisement, as it regards the oath of the inquest, say: "It is true he may return it [the justice's certificate], but we think he may also return it in substance." "That he has done in this case, and such a course is warranted here both by precedent and practice." We accord with the opinion expressed by the court of New Hampshire. The court ought not to require evidence of every minute circumstance, from the execution to the sheriff's deed; but they can not dispense with the substantial requisitions of the statute. Amongst these undoubtedly the oath of the appraisers is not the least important. The duties of the appraisers are not merely min-

isterial; they have the stamp and character of judicial proceedings, and those too of vital importance to the community. The appraisement of real property, in a state like ours, before it can be subjected to sale for the discharge of debts, is highly beneficial, not only for the security of debtors, but of creditors also. This is not a question of policy merely: it is one, however, upon which the court may, and in some cases must, exercise a sound discretion. But in the absence of testimony we are now called upon to presume that the appraisers made their return upon oath. Might not the court, with equally legal propriety, dispense with the appraisement altogether? Might we not as well presume, on the exhibition of a sheriff's deed, that there has been a judgment and an execution? Under our statute a sale, without any appraisement, would be clearly void. The authority to transfer the fee by operation of law, is a mere statutory provision. This authority, in Ohio, is limited and conditional. 1. The estate must be appraised on oath. 2. It must sell for two-thirds of the appraised value. These are conditions which must appear to the court to have been complied with before they have any authority to ratify a sale.

It is insisted that the party injured is not without remedy. It is said he may sue the sheriff and recover all that has been lost by the officer's negligence or misfeasance. With this question we have no concern in the present case, but admitting an action would lie against the sheriff because the appraisers did not make their return on oath, the remedy would be frequently inadequate. The court, however, are of opinion that the sheriff has no control over the appraisers. He appoints them, indeed, but it is not his duty to *swear them or cause it to be done, nor does there appear to [32 be any authority given him by law to coerce them into a performance of duty. But be this as it may, a power limited and conditional must be carefully pursued. Some things may be presumed in favor of a purchaser; but he must see that the authority under which he purchases has been substantially pursued. The vendor must have authority to sell, or the purchaser takes nothing.

It is not necessary in this particular case to decide whether this defect in the return of the appraisement might be supplied by parol evidence. The counsel for the plaintiff suggested at last term, that he would endeavor to procure such testimony. None such has been offered, and we are informed that none exists. Hard as the case may appear on the part of the purchaser who has paid

his money, the law constrains us to say he can take nothing by his purchase. We are of opinion that the appraisement constitutes an essential part of the proceedings in the sale of lands under an execution, and unless the appraisers are sworn, the appraisement is void.

Let the judgment be entered upon the verdict.